UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 1:07-CR-00240-SMS |
|        Plaintiff, | ) |
| | ) ORDER DENYING DEFENDANT'S MOTION |
| | ) TO DISMISS (DOC. 12) |
|   v. | ) |
| | ) |
| KIMBERLEY PEREZ, | ) |
| | ) |
|        Defendant. | ) |
| | ) |
| | ) |

The Defendant's motion to dismiss came on regularly for hearing on July 10, 2008, at 10:00 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Douglas J. Beevers appeared on behalf of Defendant; and Mark J. McKeon appeared on behalf of the government. After argument the matter was submitted to the Court.

I. Background

Defendant is charged by information with violating 18 U.S.C. § 1030(a)(2)(B)[1], which prohibits unauthorized, intentional access to computer and thereby obtaining information from a

---

[1] Title 18 U.S.C. § 1030(a)(2)(B) provides that whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any department or agency of the United States, shall be punished as provided in subsection (c) (specified punishments involving a fine or imprisonment for not more than one year [absent specified circumstances]).

department or agency of the U.S.A.

Defendant, by motion filed on February 28, 2008, moves to dismiss the case because of excessive pre-information delay asserted to be in violation of the Fifth Amendment Due Process Clause. Defendant filed opposition on July 3, 2008. The parties attach various exhibits, consisting mainly of reports of investigation or interviews and correspondence; there are no declarations providing foundations for any of this matter, and no party objects to any of the exhibits submitted. There is one declaration of a defense investigator, but it concerns efforts to identify the supervisor of Defendant during the time she worked for the IRS.

The unauthorized access occurred in 2003 during Defendant's seasonal employment with the IRS. Employees were and are restricted from accessing tax returns for non-business purposes and are not authorized to access accounts of family, friends, or acquaintances; in fact, each employee with access to the computer system is given a restricted TIN file (RTF) which records the Social Security numbers of related individuals whose records the employee is not to access. Defendant asserts that until a Social Security number is in the RTF, it would be difficult to discover an unauthorized access because the IRS's Strategic Enforcement Division (SED) uses computer programs that review computer data of accounts that the employee accessed and attempt to correlate those accesses with Social Security numbers recorded in the employee's RTF. There is also a protocol by which employees who have unintentionally or accidentally accessed an unauthorized account report it, which results in documentation of the

2

incident.

Defendant is charged with accessing the account or number of her daughter, Savanna Perez, born on January 14, 2000, "on or about April 24, 2003, through May 30, 2003," and twenty-four other individuals' information, and obtaining information. Savanna was not added to Defendant's RTF until 2005, based on a 2004 tax return filed by Defendant.

In 2005, SED identified a problem and reviewed an audit trail showing that on April 24, 30, and May 28, 2003, Defendant made forty-one unauthorized accesses to the accounts of twenty-four taxpayers, including her daughter; for twenty-three of the taxpayers, the numbers used were variants of her daughter's Social Security number.

The government asserts that in 2005, an internal investigation occurred; then on December 15, 2005, SED made a criminal referral of the matter to the Treasury Inspector General for Tax Administration (TIGTA), which began a criminal investigation. (Govt.'s Opp., Doc. 22-2 p. 2.) The investigation continued until June 14, 2006 and included 1) contacting in April 2006 the parent of a child whose account was accessed (Mot., Ex. C, Doc. 12-5 p. 2); 2) interviewing on June 14, 2006, the supervisor of Defendant in 2005 and 2006 (Teresa Borunda, who did not recall any reports from Defendant of accidental accesses) (Deft.'s Memo., Ex. E, Doc. 12-7 p. 1); and 3) interviewing Defendant on June 16, 2006 (Doc. 22-2, pp. 12-13, and Doc. 12-6, pp. 2-3).

The matter was referred to the United States Attorney, and on July 11, 2006, Defendant was notified by the government of the

3

1  investigation. (Deft.'s Memo., Ex. F, Doc. 12-8 p. 2). On

2  December 17, 2007, the government responded to Defendant's

3  counsel's request for discovery and identified Defendant's

4  supervisor at the time of the violation as Oscar Torrez; the

5  government further indicated that Torrez was not interviewed but

6  gave his telephone number. (Deft.'s Memo., Ex. G, Doc. 12-9 pp.

7  2-3.)

8      On September 28, 2007, the information was filed.

9      Thus, the delay between the occurrence (late April through

10  late May 2003) and the filing of the formal information was over

11  four years of the five-year statute of limitations referred to by

12  Defendant (18 U.S.C. § 3282); the government waited over three

13  years to interview Defendant.

14      II. Analysis

15          A. Rule 48(b)

16      Fed. R. Crim. P. 48(b) states that the Court may dismiss an

17  information if unnecessary delay occurs in filing an information

18  against a defendant. The application of Rule 48(b) is limited to

19  post-arrest situations. United States v. Lovasco, 431 U.S. 431,

20  789 n. 8 (1977); see, United States v. Barken, 412 F.3d 1131,

21  1136 (9th Cir. 2005). No information is given about Defendant's

22  having been arrested, so it does not appear that this rule alone

23  (as distinct from Constitutional law) provides a basis for

24  dismissal.

25          B. Fifth Amendment Due Process Clause

26              1. General Standards

27      Dismissal is an appropriate remedy for violations of the

28  Fifth Amendment Due Process Clause in the form of pre-accusation

4

delay where there is fundamental unfairness, which is established where the Defendant shows actual prejudice and further establishes that the delay was undertaken by the government in bad faith or solely to gain tactical advantage over the accused. United States v. Lovasco, 431 U.S. 783, 790, 795-96 (1977). In this circuit, 1) the defendant must prove actual, non-speculative prejudice from the delay, and 2) the length of the delay, when balanced against the reason for the delay, must offend fundamental conceptions of justice which lie at the base of our civil and political institutions. United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir. 1992). The course of the analysis in this circuit is first to determine if the Defendant has met his or her burden of establishing prejudice, and if prejudice is shown, then to consider the reasons for the delay; if prejudice is not shown, then the motion will be denied without consideration of the government's reasons. United States v. Barken, 412 F.3d 1131, 1136.

Protection from lost testimony and other evidence generally falls within the ambit of the statute of limitations. Huntley, 976 F.2d at 1290. To establish actual prejudice from loss of testimony, the Defendant must show that the loss has meaningfully impaired the ability to defend oneself by proof that demonstrates by definite and non-speculative evidence how the loss of evidence is prejudicial to the case. Id. The burden of proving actual prejudice is a heavy one, and the courts apply the test for prejudice stringently. United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995).

/////

5

1    ## 2. Prejudice

2        Here, Defendant argues that now and at the time she was

3    interviewed in 2006, she lacked any memory of the circumstances

4    surrounding the events of 2003 or any information to provide to

5    agents about the alleged accesses. Further, the delay has kept

6    her from locating and contacting witnesses who could assist in

7    her defense.

8        Generalized assertions of the loss of memory, witnesses, or

9    evidence are insufficient to establish actual prejudice. United

10   States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995). It is

11   generally required that if it is claimed that memory has dimmed,

12   the record must indicate how the witnesses with defective memory

13   would have testified if the memory had not dimmed. United States

14   v. Sherlock, 962 F.2d 1349, 1354 (9th Cir. 1992). In Manning, the

15   defendant in a prosecution for murder by mail bomb argued that he

16   lost access to credit card records which could have explained his

17   location at the time of the killing; his memory was not as keen

18   after the delay; and a potential key witness for the defense had

19   died. Where the defendant did not show what the credit card

20   records would have shown or what the deceased witness would have

21   said, the showing was conjectural and speculative, and the court

22   held that it was insufficient to establish actual prejudice. Id.

23   Here, as in Manning, Defendant's generalized assertions

24   concerning loss of memory or witnesses are insufficient.

25       Defendant also argues that TIGTA agents interviewed the IRS

26   employee who supervised Defendant two to three years after the

27   alleged crime, but never interviewed the employee who supervised

28   Defendant during the time the crime was alleged to have occurred.

6

Defendant also claims that the government misidentified the person who was her supervisor in discovery. This is based on the declaration of defense investigator Philip Oliver, who declared that he had interviewed Torrez, who had told him that he was a program analyst who briefly acted as a department manager in the notice review department five or six years ago (this would be 2003 or 2002), but he did not recall ever having been the supervisor or manager of Defendant or having any conversations with anyone who was investigating unauthorized access during 2003. Oliver opines that the lapse of time after 2003 allowed Torrez's memory to fade and rendered Torrez unable to recall any information. (Deft.'s Memo., Ex. H, Doc. 12-10, pp. 2-3.)

Defendant argues that in order to convict her of the crime, it must be proved that she intentionally accessed the information without authorization or exceeded authorized access to the system, and that she had the conscious objective to do so. Case law reveals that Congress intended to require access by one with a clear intent to enter, without proper authorization, computer files or data belonging to another. United States v. Sablan, 92 F.3d 865, 868 (9th Cir. 1996). Defendant argues that her supervisor would have been the one to whom she would have reported any unintentional, unauthorized accesses or compromise of her computer server, login, and password; her supervisor was the one who could have described Defendant's job duties and assignments at the time, and the delay has made it unlikely that any supervisor would be able to remember anything. Thus, she could not defend on the ground that her accesses were either unintentional or authorized.

This constitutes a generalized assertion regarding a witness without specification of what the witness might say. It does not establish a meaningful interference with the ability to defend onself.

Further, the government argues that there would be documentation of any accidental or unintended access because a report was required to be made by the employee upon the happening of any accidental access, and such a report would exist. Thus, any problem with identifying Defendant's supervisor would not be the cause of the absence of any evidence because independent documentation would exist. The government's assertions concerning the existence of a report were not contradicted by Defendant. Defendant has thus failed to show that any lack of evidence here resulted from pre-indictment delay, which is required. See, United States v. Sherlock, 962 F.2d 1349, 1354 (where a rape kit was lost, the court noted, inter alia, that the unavailability of the rape kit had not been shown to have necessarily resulted from the pre-indictment delay).

Further, the government asserts that while under oath during an interview in August 2003 by TIGTA special agents about another incident, Defendant herself identified Oscar Torrez as her supervisor from January 13, 2003, through Defendant's June 2003 furlough. (Govt.'s Opp., Doc. 22-2, pp. 9-10.)

Defendant argues that if the basis for the charge is that she exceeded authorized access (as distinct from engaging in unauthorized access), the government would have to prove that she had authority to access but used the authority to obtain information that she was not entitled to obtain. However, it

appears that the government is contending not that she exceeded access, but rather that she lacked authorization to access her daughter's account. Because the twenty-some Social Security numbers accessed were slight variations of her daughter's number, it is inferred that Defendant's accesses were attempts to get to her daughter's account, which she eventually succeeded in doing and then ceased further attempts.

Defendant acknowledged that she knew that she was not permitted to access the accounts of family members and denied any such access. She further said when interviewed that she always reviewed returns before making any accesses to make sure she does not access the account of someone she knows, and she once received her uncle's return and turned it over to her supervisor to reassign (apparently before access). (Govt.'s Memo, Doc. 22-2 p. 12.) Given the pertinent rules, which prohibited access to family members' accounts, it is difficult to see how a defense could be mounted that her job duties required her to do so. This claim of prejudice thus appears to be speculative or conjectural.

It is therefore concluded that the Defendant failed to show prejudice, and thus the reasons for the delay need not be considered.

3. <u>Reasons for the Delay</u>

In an abundance of caution, the Court will address the reasons for delay.

For dismissal to be appropriate, the delay must be caused by the government's culpability. Generally, prosecutors otherwise have wide latitude to decide when to seek an indictment. <u>Lovasco</u>, 431 U.S. at 792-95; <u>Sherlock</u>, 962 F.2d 1349, 1355 (9th Cir.

9

1992).

Here, there has been no showing of any bad faith, tactically motivated conduct, or other form of culpability on the part of the government's agents.

The government's program to detect the access was based on Social Security numbers. The passage of time before the filing of the 2004 tax return in 2005, on which Savanna's number first appeared, was innocent and possibly unavoidable by the government because of lack of knowledge of the existence of the daughter as someone to be added to the Defendant's RTF.

The additional delay in 2005 (about eight months at the least, if April 15 is taken as the day the income tax return was filed by) and for half of 2006 (Defendant was interviewed on June 14, 2006) is slightly over a year of delay, or about a year and two or three months. During that time, the investigation proceeded. Under the circumstances, it cannot be said that the length of the delay, when balanced against the reason for the delay, offends fundamental conceptions of justice which lie at the base of our civil and political institutions.

Therefore, Defendant's motion to dismiss the information for pre-accusation delay IS DENIED.

IT IS SO ORDERED.


DATED: July 11, 2008                    /s/ Sandra M. Snyder
                                        SANDRA M. SNYDER
                                        U.S. MAGISTRATE JUDGE


10